## Burger, et al. v. Allen

## McCullen, Trustee, etc. v. Allen.

(Decided December 8, 1925.)

### Appeals from Martin Circuit Court.

1. Appeal and Error—Presumed that Ommitted Portion of Record, which would have Decided Question of Boundary, Upholds Judgment.—It will be presumed that portion of record, omitted by appellants, and which would have decided question of boundary, upholds judgment of chancellor.

2. Taxation—Sale of Land to Pay Taxes, Assessed Against One After he Conveyed Land, Held Unauthorized.—Where the deed of M., conveying land, was recorded in the proper office, a full year before the land was assessed for taxes as the property of M., there was no authority for its sale to pay such taxes.

3. Wills—Residuary Devisee did Not Obtain Title to Land which Testator Conveyed Before His Death.—Residuary devisee did not obtain title to land which testator conveyed to another before his death.

4. Quieting Title—Plaintiff Must Establish Ownership of Legal Title. —Party instituting action to quiet title must establish herself to be owner of legal title of tract of land claimed by her.

5. Quieting Title—Evidence Held Not to Show Either that Location of Certain Grant was Correct, or that, when Properly Located, it

Included Land Claimed by Plaintiff.—Evidence held not to show either that location of certain grant was correct, or that, when properly located, it included land claimed by plaintiff.

6. Quieting Title—Judgment Adjudging Plaintiff to be Owner of Tract and Entitled to have Her Title Quieted Held Proper.— Where, from record, it appeared that plaintiff owned the title of record of land claimed by her, and that such land was not previously appropriated by entry, survey, and grant, plaintiff was properly adjudged to be the owner and to be entitled to have her title quieted.

7. Quieting Title—Failure of Plaintiff to Show Possession Does Not Preclude Judgment, where Answer Seeks to Quiet Title.—Failure of plaintiff to show possession does not preclude judgment quieting title, where answer constitutes counterclaim seeking to quiet title in defendants, notwithstanding Ky. Stats., section 11, requiring plaintiff to have legal title and possession.

M. C. KIRK for appellants.

VAUGHAN & HOWES, A. J. KIRK and HOBSON & HOBSON for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

Briefly stated the issues of this equitable action are: appellee, Jane Carlisle Allen, as plaintiff below, claimed to own and sought to quiet her title to a 364 acre tract of land in Martin county, Kentucky. Appellant, Joseph P. McCullen, trustee of the estate of John McKee, for that estate, claimed to own a 15,000 acre tract of land in that county, and that it embraced and included the 364 acre tract claimed by appellee, and that the title under which he claimed was elder and superior to that of appellee. He also sought to quiet title. Those of the appellants hereinafter called Burger heirs claimed to own the same 15,000 acre tract of land claimed by McCullen, trustee, and they also claimed that it covers and embraces appellee's 364 acre tract and that their title is older and superior. They also sought to quiet their title. The chancellor upon the hearing adjudged appellee to be the owner of the 364 acres claimed by her and quieted her title. Appellants, McCullen, trustee, and the Burger heirs, both have appealed.

With reference to appellee's claim to title by adverse possession but little need be said. By the evidence introduced for her on that question she failed to manifest her right to the relief she sought because she failed·to·

establish adverse possession within the legal meaning of that word continuously for a sufficient length of time to ripen into title either under the constitutional or any of the statutory provisions invoked by her.

For her title of record appellee relies upon a chain of title deducible from the grant by the Commonwealth of Kentucky to James Stepp for 2,000 acres of land granted September 4, 1858, pursuant to a survey made June 8, 1857.

Appellants insist that since appellee bases her right to the relief sought by her upon the 2,000 acre Stepp grant and devolution of title therefrom, she failed to manifest her right to it because the Stepp grant under which she claims while referred to as a 2,000 acre grant, by its own terms excludes 1,170 acres of patented land from the boundary given, and, as they insist, appellee failed to establish by proof that the tract of land claimed by her was not a part of the exclusion, or was a part of that grant. The tract of land claimed by appellee herein was conveyed by Stepp, the original patentee, to John G. Carlisle, grandfather of appellee, Jane Carlisle Allen. The original 2,000 acre patent is copied into the record. There is in the record also a copy of the deed by which its patentee conveyed the tract of land claimed by appellee to John G. Carlisle. Eighteen of the twenty lines of the boundary of the tract of land described in the deed from Stepp to Carlisle correspond exactly with eighteen of the exterior lines of the Stepp 2,000 acre boundary. The record herein contains a copy not only of the Stepp 2,000 acre grant, but also of the survey under which the grant was issued. The plat of the tract of land accompanying the survey was not copied into the record. It would show the portion of the 2,000 acre tract excluded. Since eighteen lines of the deeded boundary run and correspond with the same lines of the patent boundary, a comparison of the boundary given in the deed with the plat would readily disclose whether it lies within or without the exclusion. Appellants had the record in this case copied and brought to us. The chancellor found for appellee herein. Appellants having failed to bring to this court that portion of the record herein, that is, the plat of the original 2,000 acre Stepp grant, under a well established rule of this court we must presume that the omitted portion of the record upholds the judgment of the chancellor.

Appellants insist that appellee's chain of title filed of record herein is not complete in that properly authenticated copies of the steps in the bankruptcy proceeding, under which the referee in bankruptcy conveyed the tract of land claimed by appellee to John G. Carlisle, were not filed herein. We find, however, that the records in the case of John G. Carlisle v. Pelphrey, et al., were filed as evidence herein. The old actions made a part of the record herein have been before this court. The records in those cases have been placed with and made part of the record in this case. We find in those old records properly authenticated copies of all the steps in that proceeding in bankruptcy which establish beyond question the validity of the deed complained of by appellants. The record herein beyond question discloses that appellee has a connected chain of title from herself through her predecessors in title back to the grant from the Commonwealth by which James Stepp was granted the 2,000 acre tract of land. The record discloses the validity of that chain of title beyond all question, provided at the time the Commonwealth granted the 2,000 acre tract to James Stepp it was vacant and unappropriated land.

Appellant, Joseph P. McCullen, trustee of the estate of John McKee, and appellants, Burger heirs, both claim to own the same 15,000 acre tract of land under title of record tracing through their predecessors in title back to a grant from the Commonwealth of Virginia to Benjamin Say for 15,000 acres of land in what was then Fayette county, Virginia, dated November 13, 1786, made pursuant to a survey made March 29, 1785. The patentee Say conveyed the 15,000 acre tract to Levi Hollingsworth. Hollingsworth conveyed it to Robert Morris. Appellant, Joseph P. McCullen, for the estate for which he is trustee, claims title to it through the will of Robert Morris. The Burger heirs claim title to it through a tax deed dated December 16, 1802, which discloses that the tract of land was sold in 1801 to pay Robert Morris' taxes under an assessment made in 1800 by which it was assessed for taxation as being his property. We find in the record, however, a deed that was executed in 1795 by which Robert Morris divested himself of all his title to the 15,000 acre tract of land and that deed appears to have been recorded in Kentucky in the proper office in 1799, a full year before the land was assessed for taxes as the property of Robert Morris. This record, therefore, establishes conclusively that at the time the 15,000

acre tract of land was assessed for taxes as the property
of Robert Morris in 1800 Robert Morris did not own it.
Therefore, there was no authority for the sale of that
tract of land to pay Robert Morris' taxes. The deed in
evidence conclusively upsets the *prima facie* case made
for the Burger heirs of their title under the tax deed
and constitutes an effective and conclusive break in the
chain of title under which they claim the 15,000 acre
Benjamin Say grant. Other defects in their chain of
title appear in the record, some of which are perhaps
as effective as that just pointed out. However, we deem
it unnecessary to discuss them as their chain of title has
effectively and conclusively been disconnected.

The same deed by which Robert Morris divested
himself of the title of the 15,000 acre tract of land is
likewise an effective and conclusive break in the chain of
title under which McCullen, trustee, claims the legal
title to it. He claims under the residuary clause of the
will of Robert Morris and subsequent transfers of title.
Thus it will be seen that neither set of the appellants has
a connected chain of title deducible from the Common-
wealth under which they claim ownership of the Ben-
jamin Say 15,000 acre tract of land.

Although that be true, that fact is not sufficient to
authorize a judgment for appellee. She instituted the
action and must establish herself to be the owner of the
legal title of the tract of land claimed by her. Although
we have determined that neither the Burger heirs nor
McCullen, as trustee for the estate of John McKee, own
the title of the Benjamin Say 15,000 acre tract of land,
yet, regardless of that fact, if as a matter of fact, when
properly located, it covers and embraces the 364 acres
of land claimed by appellee herein, her title must fail
because inferior to that of the 15,000 acre tract. If the
location of that tract of land made by appellants herein
is correct, then it covers the lands claimed by appellee
and her title must fail because junior and inferior.

There is in the record a copy of the 15,000 acre sur-
vey and patent. Nothing contained in either the sur-
vey or patent is descriptive of or may be relied upon as
an aid in establishing the location of that survey, except
that it is said to adjoin Phillip Lyons' survey and to
begin at a beech tree, the southeast corner of the Phillip
Lyons survey, and to run 16 lines in accordance with
courses and distances given, up the north branch of
Sandy river, "the different courses thereof," the corner

at the end of the 16th line being said to be a sycamore tree. In addition to the 16 lines that run with the contours of the north branch of Sandy river, three other lines, one of them at right angles to the two of them that run parallel from the river, constitute the boundary. After leaving the sycamore on the river a hickory and white oak are said to stand at the first corner, a black oak at the next and a white oak at the next.

By the testimony introduced for appellants to establish the correctness of their location of that tract of land no claim is made that any of the timber designated by the survey as marking its corners is yet standing except the sycamore. To establish that the sycamore called for in the original survey is yet standing, appellants introduced the witness, Clay Williamson, a surveyor, who testified for them. He testified that they began at a sycamore standing just below the mouth of Wolfe creek and meandered the river to a point below the mouth of Little Elk creek. Reference to the original survey and patent discloses that neither Wolfe creek nor Little Elk creek nor any other stream was referred to as emptying into the river near either the beginning corner or the sycamore corner, and the reference by the surveyor to those two creeks does not in the least tend to prove that he properly located either the sycamore or the beginning corner of the survey. It appears from the evidence of that surveyor that in 1885 he was present and saw the sycamore tree blocked to ascertain whether it had ever been marked as a corner tree. Describing the marks found by blocking the tree he said: "On one side it looked like a landmark, and the other side looked like somebody just hacked it a number of hacks." Counting the annulations or rings indicating the yearly growth of the tree was then resorted to, aided by the use of a strong magnifying glass, and there was a discrepancy of 25 years indicated by the annulations. The marks found by blocking the tree, judging by the annulations indicating its yearly growth, were made 25 years after the Benjamin Say survey was originally located. These facts appearing in the record seem to this court to establish that the sycamore tree relied upon by appellants is not rather than that it is the sycamore which was marked originally as one of the corners of the Benjamin Say 15,000 acre survey.

No attempt was made by appellants to locate the Phillip Lyons survey referred to in the Say 15,000 acre

grant, and no testimony is found herein upon which to base a location of the Say grant with reference to the Lyons survey as it might have been located.

It will be observed that the first 16 lines of the Benjamin Say survey run with the contours of the north branch of Sandy river. Appellants' location of that survey must be conceded to be correct if the 16 lines of it as located for appellants coincide with the contours of the north fork of Sandy river. The deposition of the sur veyor who made the location of that survey for appellants discloses that he based his survey largely upon the sycamore tree as one of its corners. He did not undertake to survey the courses and distances of the lines of the Benjamin Say grant from that corner. The surveying done by him, assuming that tree to have been the original sycamore corner, was merely a survey of the course of the river.

He did not undertake to follow the courses and distances given in the field notes of the survey. At the time he testified he had not made a map showing the difference between the lines he ran following the contours of the river and the lines of the Benjamin Say grant which are said to run with the contours of the river. Not having made the map he testified that he was unable to give the discrepancy between the lines as he ran them and the same lines as called for in the survey. He testified, however, as to some of the discrepancies between the two, and stated that his map when prepared would show all of them. Among the discrepancies testified to one line run by him was nearly a quarter of a mile shorter than the corresponding line given in the field notes of the survey. The courses of other lines were different from those given in the survey, and other discrepancies existed. From the testimony of appellants' surveyor it appears that the plat of the 15,000 acre survey, appearing of record with the original survey, shows certain streams, not named, however, to have flowed into the north fork of Sandy river within the lines of that grant and the streams found by him flowing into that river within his location of the survey on it, as he made it for appellants herein, did not correspond either in size or location. Appellant's surveyor did not in his testimony give it as his opinion as a surveyor that the location of the 15,000 acre tract of land made by him for appellants was correct. When asked whether or not the land claimed by appellee,

Jane Carlisle Allen, lies inside of the Benjamin Say 15,000 acre grant, his answer was, "It is inside the lines I run." It is shown by the record herein that there are perhaps 150 or 200 farms occupied by claimants within the lines of the location of the Benjamin Say grant as made for appellants herein. It appears that the title of some 3,000 acres of the land claimed by the Burger heirs under the Benjamin Say grant has heretofore been in controversy between them and those claiming it under Kentucky grants. That litigation was settled between the Burger heirs and the claimants under Kentucky grants by the latter being permitted to retain the surface and one-half of the minerals, and the Burger heirs to obtain one-half of the minerals. That fact is recited as showing an apparent lack of confidence upon the part of the Burger heirs either in their title or in their location of the Benjamin Say 15,000 acre grant or both. The record discloses that the portion of the 15,000 acre survey that has been in the actual possession of the Burger heirs is also covered by Kentucky grants. In view of these facts, which are made to appear in the record herein largely from the testimony of witnesses introduced for appellants, this court is unable to conclude either that the location of the Benjamin Say grant as made by appellants herein is correct, or that when properly located it includes the James Stepp 2,000 acre grant or that part of it claimed by appellee, Jane Carlisle Allen, herein.

Appellee, Jane Carlisle Allen, appearing from the record herein to own the title of record of the 364 acre tract of land claimed by her, deducible from the grant by the Commonwealth of the 2,000 acre tract to James Stepp, and the lands so claimed by her not having been shown by the record herein to have been previously appropriated by entry, survey and grant, it follows that the trial court properly adjudged her to be the owner of that tract of land and to be entitled to have her title quieted of the claims of the appellants. While it is true that under section 11 of our statutes, in actions to quiet title, it is required that the plaintiff shall have both the legal title and possession of the lands, this court has uniformly held that where the answer is made a counter-claim and the defendant also seeks to quiet his title of the land claimed, the court will settle the controversy and award the plaintiff a judgment, although he may

not have shown himself to be in possession.   (See Hall v. Hall, 149 Ky. 817, 149 S. W. 1128.)

The judgment of the chancellor herein being in accord herewith is therefore affirmed.